1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEAN RHEA,

          Plaintiff,

     v.

WASHINGTON STATE DEPARTMENT
OF CORRECTIONS, et al.,

          Defendants.

No. C10-0254BHS

ORDER ADOPTING REPORT
AND RECOMMENDATION
WITH CLARIFICATION

      This matter comes before the Court on the Report and Recommendation of the

Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 18), Defendants'

objection to the report and recommendation (Dkt. 22), and Plaintiff's ("Rhea") response to

Defendants' objection (Dkt. 23). The Court has considered the Report and Recommendation,

Defendants' objections, Rhea's response, and the remaining record, and hereby adopts the

Report and Recommendation with clarification.

## I. PROCEDURAL AND FACTUAL HISTORY

      This matter arises out of a 42 U.S.C. § 1983 civil rights challenge by Rhea to the

medical treatment she did not receive at the Washington Department of Corrections

("DOC"). Pursuant to recommendations by four different physicians, Rhea has moved the

ORDER – 1

Court for preliminary injunction to require Defendants to treat a neuroma[1] located at the end of her amputated right leg. *See* Dkt. 47 at 1.

In 1993, Rhea was in a motorcycle accident which resulted in the amputation of her right leg at the knee. Dkt. 9, Ex. 2. For the first nine years after having her leg amputated, Rhea used crutches to compensate for the loss of her leg. *Id.* However, she began experiencing severe pain in her shoulders and her left knee which resulted in knee surgery to repair the damage caused by supporting all of her weight on her left knee. *Id.* Rhea developed her first neuroma in 1995 or 1996, on which her doctor performed a surgical procedure. *Id.* In 2002, Rhea obtained a properly fitting prosthesis,[2] which enabled her to be much more mobile and relieve the pain in her shoulders and left knee. Dkt. 18 (citing Dkt. 9).

Rhea was incarcerated at the Washington Correction Center for Women ("WCCW") beginning in May 2008. Dkt. 18. Prior to being incarcerated, Rhea had scheduled an appointment to have her prosthesis evaluated because it was not fitting well; however, she was arrested before this could happen. *Id.* (citing Dkt. 9). When she arrived at the WCCW, Rhea was walking without the assistance of crutches, wheelchair, or cane. Dkt. 18. After her arrival, Rhea's prosthesis began to give her additional problems; weight loss and broken parts of the prosthesis resulted in pain to her right thigh. *Id.* Rhea was also falling approximately once per week because of the mal-fitting prosthesis. *Id.* On March 18, 2009, Rhea received a notice from the Care Review Committee ("CRC") in which she was advised of their decision to replace her prosthesis. *Id.* (citing Dkt. 9).

---

[1]A painful mass of nerve tissue at the end of an amputated stump. Dkts. 18, 22.

[2]Rhea contends that she had a difficult time obtaining a properly fitting prosthesis prior to 2002. Dkt. 18 (citing Dkt. 9).

ORDER – 2

Between April and July 2009, Rhea was examined by four physicians[3], all concluding that, in order to effectively treat the issues in her shoulders, left leg, and right stump, Rhea should receive a new prosthesis. Dkt. 18 (citations omitted). Dr. McNalley, from the University of Washington Medical Center, contends that, even if Rhea does not receive a new prosthesis, the neuroma on her right stump would be very painful and should be surgically treated. *Id.* Between May and December 2009, Rhea had consistently notified the DOC of her worsening condition through Health Services kites, contending that the pain in her right stump (even without wearing her prosthesis[4]) was "very painful." Dkt. 18 (citations omitted). Rhea also complained of shoulder pain and pain in her left knee from constantly having to use crutches or a wheelchair. *Id.* Rhea lost her independence and had to rely on others to assist her at the WCCW. *Id.*

On July 22, 2009, the DOC's CRC determined that replacing Rhea's prosthesis was not clearly medically necessary and denied Rhea's request to obtain a new prosthesis. *Id.* According to Dr. Hammond, a DOC physician on the CRC who has never treated Rhea, surgery on the neuroma would only be necessary if Rhea were using a prosthesis. Dr. Hammond denied Rhea's prosthetic replacement in part because she coped without a prosthesis for the first nine years of her amputation and in part to the fact that Rhea was coping to live without a prosthesis and was not in "intractable pain."

On February 10, 2010, Rhea filed her complaint against Defendants alleging that they violated (1) her Eighth and Fourteenth Amendment rights, (2) their duty to keep prisoners safe and healthy, (3) the Americans with Disabilities Act, and (4) section 504 of the Rehabilitation Act.  Rhea then moved the Court for a preliminary injunction to require Defendants to treat her painful neuroma on April 19, 2010 (Dkt 9).

---

[3]Dr. McNalley from the University of Washington; Dr. Noh, a resident at the University of Washington; Dr. Kunkle, the DOC's contract orthopedic specialist; and Dr.Colter, Rhea's physician at the WCCW. Dkt. 18.

[4]Rhea stopped wearing her prosthesis in May 2009.

ORDER – 3

The Magistrate Judge issued a 26-page report and recommendation (Dkt. 18) on July 2, 2010, wherein he recommended that Rhea's motion for preliminary injunction be granted. Specifically, the Magistrate Judge recommended that

> (1) Defendants arrange for Ms. Rhea to be examined by Dr. Doug Smith, of the Amputee Clinic at Harborview Medical Center in Seattle, to evaluate Ms. Rhea's neuroma and render a treatment recommendation.
> (2) The examination by Dr. Smith should take place as soon as Dr. Smith's schedule permits.
> (3) Defendants shall provide Rhea's counsel with a copy of Dr. Smith's consultation report and treatment recommendation within two days after receipt.
> (4) Defendants shall authorize, perform, and/or facilitate any treatment Dr. Smith recommends.
> (5) If Defendants dispute the necessity of Dr. Smith's treatment recommendation, they may move this Court to modify this Order by filing a motion no later than fourteen (14) days after receiving Dr. Smith's recommendation.

Dkt. 18 at 25.

On July 23, 2010, Defendants objected to the report and recommendation. Dkt. 22. On August 4, 2010, Rhea responded to the objections. Dkt. 23.

## II. DISCUSSION

Defendants object to (1) the report and recommendation's ultimate finding because they contend that it is "erroneously based . . . on the supposition that Rhea will require a new prosthetic"; and (2) that the report and recommendation's finding violates the Prison Litigation Reform Act because it is "overly broad and beyond the scope of the Rhea's request." Dkt. 22.

### A.    Treating Rhea's Neuroma

Defendants contend that ordering them to treat Rhea's neuroma "presupposes that the Eighth Amendment requires that the [DOC] provide her with a prosthesis." Dkt. 22 at 3. Defendants' contention misconstrues Magistrate Judge Strombom's findings.

As stated by the Magistrate Judge, "Rhea has described the pain she suffers from the neuroma even when she is not wearing a prosthesis." Dkt. 18 at 19. Additionally, Dr. McNalley provides other concerns besides the neuroma's influence on wearing a prosthesis,

ORDER – 4

1  which include "distal weight bearing,[5] gait abnormalities, and worsening biomechanics

2  across the hip, pelvis, low back, and left leg." Dkt. 18 (citing Dkt. 9, Ex. 3). The Magistrate

3  Judge's finding that the neuroma is causing Rhea chronic and substantial pain without the

4  prosthesis is further supported by the fact that Rhea continually complained to the DOC

5  about the pain in her right stump because of the neuroma even after she discontinued

6  wearing the prosthesis. Defendants fail to show any facts that would contradict Rhea's claim

7  that the neuroma causes her pain without the prosthesis.

8       Accordingly, the Court finds adequate evidence to support the claim that Rhea's

9  neuroma should be treated regardless of whether a prosthesis is required.

10  **B.    Magistrate Judge's Finding as "Overly Broad"**

11       In their objections to the report and recommendation, Defendants contend that the

12  Magistrate Judge's report "reaches beyond the confines of the [Prison Litigation Reform Act

13  ("PLRA")] and Rhea's specific request in her motion for preliminary injunction." Dkt. 22 at

14  5. The PLRA imposes guidelines, beyond the *prima facie* showing for a preliminary

15  injunction, on the relief to be granted to an inmate litigant challenging prison conditions:

16       Preliminary injunctive relief must be narrowly drawn, extend no further
         than necessary to correct the harm the court finds requires preliminary
17       relief, and be the least intrusive means necessary to correct that harm. The
         court shall give substantial weight to any adverse impact on public safety or
18       the operation of a criminal justice system caused by the preliminary relief
         and shall respect the principles of comity set out in the paragraph (i)(B) in
19       tailoring any preliminary relief.

20  18 U.S.C. § 3626(a). "Section 3626(a) therefore operates simultaneously to restrict the

21  equity jurisdiction of federal courts and to protect the bargaining power of prison

22  administrators—no longer may courts grant or approve relief that binds prison

23  administrators to do more than the constitutional minimum." *Gilmore v. People of the State*

24  *of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

25  _____

26       [5]Defendants argue that the weight-bearing concern only applies to the wearing of a
    prosthesis; however, as discussed by Rhea in her reply, Defendants do not dispute any of Dr.
27  McNalley's testimony.

28  ORDER – 5

1    The Defendants specifically object to the Magistrate Judge's fourth recommendation

2  that "Defendants shall authorize, perform, and/or facilitate *any treatment* Dr. Smith

3  recommends." Dkt. 18 at 25 (emphasis added). Defendants contend that the Magistrate

4  Judge's "any treatment" recommendation could be interpreted as giving Dr. Smith "carte

5  blache" to treat Rhea." Dkt. 22 at 5. Rhea responds to this concern by suggesting that the

6  recommendation could be clarified by expressly limiting Rhea's treatment to the neuroma

7  only. Rhea proposes modifying the Magistrate Judge's fourth recommendation to read

8  "Defendants shall authorize, perform, and/or facilitate any treatment Dr. Smith recommends

9  *as reasonably necessary to address Rhea's neuroma*." Dkt. 23 at 4 (emphasis added). The

10  Court concludes that this clarification sufficiently limits Rhea's injunctive relief to satisfy

11  Defendants' objection that "any treatment" recommended by Dr. Smith is overly broad.

12    Therefore, the Court will adopt the Magistrate Judge's recommendation with the

13  clarification that the treatment received by Rhea will be limited to the relief Rhea had

14  moved the Court for, to treat only her neuroma.

15                                    **III. CONCLUSION**

16    Therefore, it is hereby **ORDERED** that the Court **ADOPTS** the report and

17  recommendation with **CLARIFICATION,** for the reasons stated herein:

18    1.    Defendants shall arrange for Ms. Rhea to be examined by Dr. Doug Smith, of

19  the Amputee Clinic at Harborview Medical Center in Seattle, to evaluate Ms. Rhea's

20  neuroma and render a treatment recommendation.

21    2.    The examination by Dr. Smith should take place as soon as Dr. Smith's

22  schedule permits.

23    3.    Defendants shall provide Rhea's counsel with a copy of Dr. Smith's

24  consultation report and treatment recommendation within two days after receipt.

25    4.    Defendants shall authorize, perform, and/or facilitate any treatment Dr. Smith

26  recommends *as necessary to address Rhea's neuroma.*

27

28  ORDER – 6

5.      If Defendants dispute the necessity of Dr. Smith's treatment recommendation, they may move this Court to modify this order by filing a motion no later than fourteen (14) days after receiving Dr. Smith's recommendation.

DATED this 17th day of September, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER – 7